

THIS CONSTITUTES NOTICE OF ...
AS REQUIRED BY FRCP, RULE 77(d).

FILED
CLERK, U.S. DISTRICT COURT
MAR 16 2000
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

___ Priority
___ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3

ENTERED
CLERK, U.S. DISTRICT COURT
MAR 7 2000
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(O. PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION, ON THIS DATE.
DATE: MAR 17 2000
DEPUTY CLERK

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

KURT JOHN VON COLLN, JR., ) CV-97-3896 LGB (CWx)
KEITH GEORGE STRINGER, ERIC ) Consolidated with
PRATT, JEFFERY LLOYD, )
) CV-97-8352 LGB (CWx)
Consolidated Plaintiffs, ) CV-98-3051 LGB (CWx)
) CV-98-6092 LGB (CWx)
v. )
) ORDER GRANTING PLAINTIFFS' MOTION
COUNTY OF VENTURA, SHERIFF ) FOR INTERIM ATTORNEY'S FEES
LARRY CARPENTER in his )
official and personal )
capacity, SHERIFF ROB BROOKS )
in his official and personal )
capacity, CHIEF KEN KIPP in )
his official and personal )
capacity, deputies JOHN )
HAJDUCKO, DENNIS SMITH, )
CLINTON JOHNSON, EDWIN ILANO )
and TODD WERRE, AND Does 1- )
10, )
Defendants. )
_____ )

___ Docketed
___ Copies / NTC Sent
___ JS-5 / JS-6
___ JS-2 / JS-3
___ CLSD

I.   Introduction

     This matter comes before the Court on a motion by the

consolidated plaintiffs for an award of interim attorneys fees

under 42 U.S.C. § 1988.  Because plaintiffs can be construed as

"prevailing parties" under Section 1988, appropriate fees as

calculated under the lodestar formula should be awarded.

## II.   Factual and Procedural History

The factual background of the case is contained in this Court's November 15, 1999, Order granting plaintiffs' motion for preliminary injunction, and thus, only a brief summary of the relevant case history follows.  This case is brought by four individuals who were, at one point, detained by the Ventura County Sheriff's Department (VCSD), and on behalf of those similarly situated.  Each of the plaintiffs alleged treatment by the VCSD that gave rise to three causes of action.  The plaintiffs claimed that their detention and placement in the Pro-Straint chair (1) violated 42 U.S.C. § 1983 by depriving plaintiffs of various of their Constitutional rights, (2) showed that defendants Carpenter, Brooks and Kipp failed to train deputy sheriffs in violation of defendants' statutory duty, and that they failed to supervise and investigate deputy sheriffs thereby causing constitutional violations, and (3) constituted a violation of 42 U.S.C. § 1983 by the defendants because the events constituted an unconstitutional custom or practice causing constitutional violations.

Plaintiffs sought injunctive relief in order to prohibit the defendants from using the Pro-Straint chair for purposes for which it was not designed.  This Court granted plaintiffs' request and issued a preliminary injunction by an order dated November 15, 1999.

The first of the four complaints was filed on behalf of Plaintiff Von Colln on May 27, 1997.  Thus, plaintiffs' counsel had

1  been engaged in discovery matters related to the case for over two
2  years at the time the preliminary injunction was granted.[1]

3      On January 3, 2000, plaintiffs filed a motion for interim
4  attorney's fees pursuant to 42 U.S.C. § 1988, seeking compensation
5  for time spent on matters relating to the preliminary injunction.
6  Defendants filed their opposition to the motion on January 12,
7  2000.  Plaintiffs then filed their reply in support of the motion
8  on January 18, 2000.

9

10  **III. Standard**

11      Under the "American Rule" each party in a lawsuit ordinarily
12  bears its own attorney's fees unless there is an express statutory
13  authorization to the contrary.  See Alyeska Pipeline Services Co.
14  v. Wilderness Society, 421 U.S. 240, 247 (1975).  In response to
15  the Supreme Court's decision in Alyeska Pipeline, Congress enacted
16  the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §
17  1988.  Specifically, 42 U.S.C. § 1988 (b) provides: "[i]n any
18  action to enforce a provision of [§ 1983], the court, in its
19  discretion may allow the prevailing party, other than the United
20  States, a reasonable attorney's fee as part of the costs."

21      The United States Supreme Court has held that "to qualify as a
22  prevailing party, a civil rights plaintiff must obtain at least
23  some relief on the merits of his claim."  Farrar v. Hobby, 506 U.S.
24  103, 111 (1992).

25

26      [1]  The remaining plaintiffs' complaints were filed in the
27  following order: Plaintiff Stringer's complaint was filed on
    November 13, 1997; Plaintiff Pratt's complaint was filed on April
28  22, 1998; Plaintiff Lloyd's complaint was filed on July 28, 1998.
    On August 11, 1999, all four cases were consolidated.

3

1    Furthermore, the Court has stated that delaying an award of

2 attorney fees until the conclusion of litigation "would work a

3 substantial hardship on plaintiffs and their counsel" and serve as

4 a disincentive to the types of actions that Congress sought to

5 encourage by passing § 1988.  Bradley v. Richmond Sch. Bd., 416

6 U.S. 696, 723 (1974).  As such, interim fees awarded during the

7 pendency of litigation are appropriate when the court has issued an

8 order that determines the "substantial rights of the parties," that

9 is, "when a party has prevailed on the merits of at least some of

10 his claims."  Hanrahan v. Hampton, 446 U.S. 754, 757-58

11 (1980)(quoting Bradley, 416 U.S. at 723 n.28).  The Supreme Court

12 has also recognized that interim fees are "especially appropriate

13 where a party has prevailed on an important matter in the course of

14 litigation, even when he ultimately does not prevail on all

15 issues."  Hanrahan, 446 U.S. at 757 (quoting S.Rep.No. 1011, 94th

16 Cong., 2d Sess. 5, reprinted in 1976 U.S. Code Cong. & Admin. News,

17 5908, 5912).

18    Addressing preliminary injunctions specifically, the Ninth

19 Circuit has held that a party prevailing on a preliminary

20 injunction motion has "succeeded on a 'significant issue in

21 litigation which achieve[d] . . . the benefit the parties sought in

22 bringing suit.'"  Williams v. Alioto, 625 F.2d 845, 847 (9th Cir.

23 1980), cert. denied 450 U.S. 1012 (1981) (quoting Sethy v. Alameda

24 County Water Dist., 602 F.2d 894, 897-98 (9th Cir. 1979), cert.

25 denied, 444 U.S. 1046 (1980)).  Thus, by obtaining an order for a

26 preliminary injunction, a party has "prevailed on the merits of at

27 least some of [its] claims."  Hanrahan, 446 U.S. at 759; see also

28 Williams v. Alioto, 625 F.2d at 847.

4

1    IV.   **ANALYSIS**

2          **A.   Prevailing Party**

3          Defendants assert that the Court's order granting the

4    preliminary injunction was not an unambiguous indication of the

5    plaintiffs' probability of success on the merits and that,

6    therefore, plaintiffs cannot be construed as prevailing parties

7    under Section 1988.  Defendants cite Webster v. Sowders, 846 F.3d

8    1032 (6th Cir. 1988), in support of this proposition.  In Webster,

9    the Sixth Circuit analyzed the factual circumstances to determine

10   whether the preliminary relief represented an entitlement to relief

11   on the merits.  See Webster, 846 F.3d at 1036.  The Sixth Circuit

12   stated that the preliminary relief must represent an "unambiguous

13   indication of probable success on the merits, and not merely a

14   maintenance of the status quo ordered because the balance of

15   equities greatly favors the plaintiff."  Id.  Webster has not been

16   adopted by the Ninth Circuit and is not binding precedent on this

17   Court.  Even if Webster was applied to the present case, however,

18   the order granting the preliminary injunction authored by this

19   Court was an unambiguous indication of plaintiffs' probable success

20   on the merits.

21         First, the procedural history in the present case can easily

22   be distinguished from the history in Webster.  The district court

23   in Webster issued a TRO based on the fact that inmates were being

24   compelled to engage in asbestos removal at their prison facility.

25   See id. at 1034.  Two weeks after the TRO was issued, the court

26   granted plaintiffs a preliminary injunction which focused on the

27   health-related aspects of the emergency.  See id.  The court stated

28   in its opinion that "'an emergency situation exists requiring

1   immediate intervention'" and that "'unless immediate action is
2   taken this hazard may be aggravated.'"   Id. (citation omitted).
3   Within days of granting the preliminary injunction, the court
4   postponed the trial, discovery and a ruling on qualified immunity
5   motions and appointed a firm of asbestos-removal experts to oversee
6   compliance.   See id.   The court also awarded plaintiffs' counsel
7   interim attorney fees.   The Sixth Circuit denied the award of
8   attorney fees for the district court's failure to provide an
9   "unambiguous indication of probable success on the merits."   Id. at
10  1036.

11      In the present case, the Court did not postpone trial on
12  certain issues, rulings on motions or discovery prior to the
13  granting of the preliminary injunction.   Plaintiffs filed their
14  complaints between May of 1997 and July of 1998.   The Court granted
15  plaintiffs' motion for preliminary injunction in its Order of
16  November 15, 1999.   30 months transpired from the date of the
17  filing of the first complaint to the order granting the preliminary
18  injunction.   Plaintiffs' attorneys state that in the interim they
19  engaged in a plethora of discovery and other pretrial work
20  including participating in 30 depositions and compelling 5000
21  documents in an attempt to prove their clients' claim that the
22  practice of using the Pro-straint chair was cruel and unusual
23  punishment.   (Plaintiffs' Reply at 4.)   As a result, unlike
24  Webster, the amount of time that lapsed between the filing of the
25  complaints and the order granting the preliminary injunction
26  allowed plaintiffs' counsel to engage in the type of pretrial work
27  that Congress intended to be compensated by enacting Section 1988.
28

1    A second distinguishing element is that in <u>Webster</u>, the Sixth
2  Circuit found that the district court's statement that the
3  "probability of plaintiffs' success in this action is very great"
4  was not supported by findings and conclusions that supported a
5  determination of liability or the operative facts which supported
6  liability.  <u>Webster</u>, 846 F.2d at 1036.  The Sixth Circuit noted
7  that the emphasis of the district court's opinion was on the
8  "threat of irreparable harm" posed by exposing the inmates to the
9  asbestos removal.  <u>Id.</u>  The district court had even expressed
10  "ambivalence" as to plaintiffs' possibility of success on the
11  merits.  <u>Id.</u> at 1037.

12    By contrast, this Court engaged in a detailed analysis
13  sufficient to provide an unambiguous indication of probable success
14  on the merits.  Beginning on page 25 of the Order, the Court
15  authored a nine-page analysis of the standard for a preliminary
16  injunction as applied to the facts of the case.  It extensively
17  detailed the facts surrounding the detention and use of the Pro-
18  straint chair with regard to each plaintiff.  The Court carefully
19  addressed the merits of each of the plaintiffs' claims in such a
20  way that the order could not be deemed a mere "procedural" success
21  for the plaintiffs.

22    The Court began with a discussion of the standard applied to
23  claims asserting violations of a detainee's Eighth and Fourteenth
24  Amendments.  (Order at 25:14-26:17.)  The Court examined the
25  standard in <u>Spain v. Procunier</u>, 600 F.2d 189, 197 (9th Cir. 1979),
26  upholding an injunction prohibiting the use of mechanical
27  restraining devices that resulted in physical or mental pain and
28  were, therefore, cruel and unusual and violative of the Eighth

1  Amendment regardless of the intent or purpose of those who inflict
2  the pain.   (Order at 26:18-27:11.)

3      Having ascertained the proper standard to apply, the Court
4  next examined the Jail Incident Reports, Inmate Monitoring Logs and
5  the California forensic medical group records provided by the  VCSD
6  to plaintiffs and Katherine Burns who reviewed and summarized the
7  records.   The data established the specific instances of the VCSD's
8  use of the Pro-straint chair including the number of times the
9  chair was used, the reasons for use and the duration of use.
10 (Order at 27:12-29:19.)

11     The Court also looked at the circumstances of the use of the
12 Pro-straint chair on each of the plaintiffs.  (Order at 30:1-
13 31:19.)   In Stringer's case, he was taken into custody and placed
14 in a single cell.  He began kicking the wall and when told to stop
15 yelled an obscenity at a deputy.  He then stood in a fighting
16 stance and was, therefore, placed in the Pro-straint chair for five
17 hours.   (Order at 30:1-30:22.)   Pratt was taken into custody and
18 appeared agitated and would not follow instructions.  He became
19 violent only when forced into the Pro-straint chair.   (Order at
20 30:23-31:5.)  Von Colln undressed himself then allegedly raised his
21 hand when he was approached by two deputies.  He was placed in the
22 chair where he remained for six hours.  (Order at 31:6-31:19.)   The
23 Court also noted that the  VCSD did not have documentation for
24 Lloyd as it was apparently lost, destroyed or never made.   (Order
25 at 31, n.6.)

26     After a discussion of the plaintiffs' confinement to the
27 chair, the Court determined that the reasons given for restraining
28

8

1  an arrestee in the chair were often for having a "bad attitude,"[2]

2  not as a last resort against a violent arrestee.  The Court

3  concluded that such conduct was tantamount to punishment.  (Order

4  at 32:7-9.)

5      Based upon the record the Court determined that an intentional

6  and pervasive pattern of misconduct flowed from the policy

7  developed by the Ventura County Jail regarding the use of the Pro-

8  straint chair.  The Court noted that while the chair was not to be

9  used for punishment purposes, the term "punishment" was not defined

10 in the policy and left supervisors with the full discretion as to

11 the use of the chair.  The policy failed to specify a maximum

12 duration for restraint in the chair or a provision for bathroom use

13 to avoid defecation or urination.  Such matters were left to the

14 discretion of the deputies.  The Court also noted that Burns'

15 summary preliminarily showed that the VCSD's misuse of the chair

16 flowed from a practice of restraining non-violent arrestees for

17 extended periods of time in violation of the arrestees' Fourteenth

18 Amendment rights.  (Order at 32:10-33:19.)  The Court determined

19 that the plaintiffs had demonstrated a "strong likelihood of

20 success on the merits" based upon the record.  (Order at 33:20-26.)

21

22

23

24  [2] According to the VCSD's records, arrestees were placed in
    the chair for reasons far less severe than combativeness or extreme
25  violence, including "banging on windows," "pounding on glass,"
    "kicking door," "uncooperative[ness]," "banging on walls, bunk and
26  doors," exhibiting bizarre behavior, fail[ing] to respond to
    commands, [and] self-destructive[ness]," "banging on door,"
27  "bizarre behavior," "possible seizures," "threats to staff and []
    cell door would not lock," "pounding on door, threaten[ing] staff
28  and refus[ing] to follow commands," "creating disturbance,
    threats," and so on.  (Order at 31:20-32:6.)

1    Thus, the Court engaged in a thorough analysis of the facts
2    applied to the law to reach its determination of the plaintiffs'
3    probability of success on the merits.  The analysis was certainly
4    more substantial than the mere "rote statement" rejected by the
5    Sixth Circuit in Webster.  Pursuant to that record, plaintiffs are
6    prevailing parties for the purposes of Section 1988.

7

8    **B.   Reasonable fees**

9    The determination of the appropriate fees to be awarded is a
10   matter wholly within the district court's discretion.  See Hensley
11   v. Eckerhart, 461 U.S. 424, 437 (1983).  Although it enjoys broad
12   discretion, it is important that the court explain the reasoning
13   behind its decision to award fees.  See id.  The fee applicant
14   bears the burden of proving that an award of fees is appropriate
15   under Section 1988.  See id.

16   The Ninth Circuit has directed district courts to calculate a
17   reasonable fee by "multiplying the number of hours reasonably
18   worked on litigation by a reasonable hourly rate, arriving at a
19   'lodestar.'" Webb v. Ada County, 195 F.3d 524, 526 (9th Cir. 1999)
20   (citing McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir.
21   1995).  The Court, however, enjoys "considerable discretion" in
22   determining a reasonable fee and may adjust the lodestar components
23   or the lodestar itself.  See Schwarz v. Secretary of HHS, 73 F.3d
24   895, 901 (9th Cir. 1995).

25   "The fee applicant bears the burden of documenting the
26   appropriate hours expended in the litigation and must submit
27   evidence in support of those hours worked." Gates v. Deukmejian,
28   987 F.2d 1392, 1397 (9th Cir. 1992) (citation omitted).  "The party

10

1  opposing the fee application has a burden of rebuttal that requires
2  submission of evidence to the district court challenging the
3  accuracy and reasonableness of the hours charged or the facts
4  asserted by the prevailing party in its submitted affidavits."   Id.
5  at 1397-98 (citation omitted).

7          **1.   Reasonable hours**
8          The first component of the lodestar formula requires a
9  determination of a reasonable number of hours worked on the
10 litigation.   See Webb, 195 F.3d at 526.   In the present case,
11 defendants have conceded that counsel for plaintiffs have made
12 reasonable requests as to the amount of hours worked for each task
13 entered in the billing summaries submitted by counsel.   (Held
14 Decl., ¶2.)   Therefore, the reasonableness of the amount of hours
15 claimed for each particular task is not in dispute.

16         Defendants do challenge, however, plaintiffs' alleged attempt
17 to include in their claim for fees work not related to the
18 preliminary injunction issue which does not merit an award of fees
19 under Section 1988.

21         **a.   Obtaining discovery**
22         In Hanrahan, the Supreme Court stated that recovery of fees
23 for interlocutory dispositions affecting only the extent of
24 discovery was not appropriate under Section 1988.   See Hanrahan,
25 446 U.S. at 759.   The Court's analysis turned on whether the
26 interlocutory dispositions were sufficient to deem the party a
27 "prevailing party."   See id.   The Court stated "[a]s is true of
28 other procedural or evidentiary rulings, these determinations may

11

1  affect the disposition on the merits, but were themselves not

2  matters on which a party could 'prevail' for purposes of shifting

3  his counsel fees to the opposing party under § 1988." Id.

4      In the present case, defendants have challenged plaintiffs'

5  request for compensation of several matters involving discovery

6  matters not related to the preliminary injunction. Accordingly,

7  each of the defendants' challenges to plaintiffs' request for fees

8  related to discovery will be addressed.

9      Defendants challenge several entries because they allege that

10  certain depositions were germane only to the Von Colln physical

11  damages claim for injuries resulting from confinement in the Pro-

12  straint chair, not to the preliminary injunction. (Held Decl., ¶

13  3-4.) Other deposition entries are challenged because the

14  deponents had no knowledge of the chair's use.

15      Defendants challenge (1) the entries related to the deposition

16  of Ron Borgio, the manufacturer of the shackle component of the

17  chair (Held Decl., ¶ 5(a),(b).); (2) the entries  related to the

18  deposition of Von Colln's father (See id. at ¶ 5(c),(j).); (3) the

19  entry for the deposition of Dr. Guidotti (See id., ¶ 5(d).); (4)

20  the entries related to the deposition of Officer Funk whose

21  testimony establishes Pratt's behavior at the time of his arrest

22  (See id., ¶ 5(e),(f).); (5) the entry for the deposition of

23  Stringer's wife (See id., ¶ 5(g).); (6) the entry for the

24  deposition of Officer Klamser whose testimony establishes the

25  circumstances of Von Colln's arrest (See id., ¶ 5(h).); and (7) the

26

27

28

12

1  entry for participation and travel to the deposition of Von Colln's
2  brother (See id., ¶ 5(i).).[3]

3      Defendants argue that under Hanrahan, plaintiffs have not
4  prevailed in a sufficient manner to justify an award of fees.  The
5  defendants' reliance on Hanrahan is misguided.  In Hanrahan, the
6  plaintiffs had defeated a directed verdict on appeal and had
7  prevailed on several interlocutory dispositions.  See Hanrahan, 446
8  U.S. at 759.  The Supreme Court held that such victories were not
9  sufficient to  construe plaintiff as a prevailing party under
10  Section 1988.  See id.  Unlike Hanrahan, the present plaintiffs
11  have prevailed in obtaining a preliminary injunction, not merely an
12  interlocutory disposition or defeating a directed verdict.

13      Therefore, Hanrahan does not apply here.  Nonetheless, the
14  Court's order granting the preliminary injunction did not reach the
15  merits of the damages claim.  Therefore, it cannot be said that
16  plaintiffs have  prevailed on the damages claim.  As such, the
17  Court must then look to the inter-relatedness of the claims
18  prevailed upon and those not prevailed upon.  See Hensley v.
19  Eckerhart, 461 U.S. 424, 434 (1983).  In Hensley, the Supreme Court
20  noted that "work on an unsuccessful claim cannot be deemed to have
21  been 'expended in pursuit of the ultimate result achieved.'"
22  Hensley, 461 U.S. at 435 (citation omitted).  The Court stated
23  further that

24      [when] a plaintiff has achieved only partial or limited
25      success, the product of hours reasonably expended on the
26      litigation as a whole [multiplied by] a reasonable hourly rate

27  _____

28      [3]  The total number of hours in question for this set of
    challenges by the defendants is 61.9 hours.

1    may be an excessive amount.  This will be true even where a

2    plaintiff's claims were interrelated, nonfrivolous, and raised

3    in good faith.  Congress has not authorized an award of fees

4    whenever it was reasonable for a plaintiff to bring a lawsuit

5    or whenever conscientious counsel tried the case with devotion

6    and skill.

7  Id. at 436.  In such a situation, according the Court, "the most

8  critical factor is the degree of success obtained."  Id.

9        Here, plaintiffs argue that it is within the discretion of the

10  Court to award fees for all of the services claimed.  (Reply at

11  7:14-9:11.)  Furthermore, they argue that much of their discovery

12  research was necessary to prove that the Pro-straint chair was

13  being used in an unconstitutional manner.  (Plaintiffs' Reply,

14  Mercado Decl., ¶ 7.)  Plaintiffs have failed, however, to address

15  whether the "degree of success" was sufficient to justify an award

16  of fees for work on issues unrelated to the successful claims.

17        The entries noted above are not related to the use or the

18  policy regarding use of the chair.  They relate either only to the

19  damages claim or to the circumstances of the arrest of several of

20  the plaintiffs.  Accordingly, notwithstanding plaintiffs' argument

21  that regardless of the context of the deposition, their focus was

22  the injunction,[4]  (See id. at ¶ 4.),  pleadings of this sort do not

23

24  ───────────────

25        [4]  Plaintiffs argue that their purpose was to "prove a
    practice that the restraints [were] being misused and supervisors
26  approved the torture [of] persons in the booking area" and that the
    "manner in which [the] chair is used in the Jail, violates
27  constitutional rights."  (Plaintiffs' Reply, Mercado Decl., ¶ 4.)
    Plaintiffs do not explain, however, how depositions of people with
    no knowledge  of the VCSD's use and policy regarding use of the
28  chair further their arguments at the preliminary injunction stage.

1 | meet the burden imposed on plaintiffs to prove that their services
2 | merit compensation.[5]

3 |     Therefore, plaintiffs' motion is denied with respect to the
4 | foregoing fee requests for the 59.4 hours worked on discovery
5 | matters unrelated to the preliminary injunction.

6 |

7 |             **b.**   **Defending motion to dismiss and motion for**
8 |                 **summary judgment**

9 |     Defendants next argue that plaintiffs are not entitled to
10 | attorney's fees for successfully defending defendants' motion to
11 | dismiss and motion for summary judgment.  In support of their
12 | argument, defendants cite to <u>Hewitt v. Helms</u>, 482 U.S. 755, (1987),
13 | and <u>Hervey v. Estes</u>, 65 F.3d 784 (9th Cir. 1995).  In <u>Hewitt</u>, the
14 | Supreme Court rejected a request for attorney fees based upon an
15 | interlocutory ruling that a complaint should not have been
16 | dismissed for failure to state a claim.  <u>See Hewitt</u>, 482 U.S. at
17 | 760.  The Court held that the plaintiff in <u>Hewitt</u> had not received
18 | sufficient relief on the merits to justify construing him as a
19 | prevailing party.  <u>See id.</u>  The interlocutory ruling was "not the
20 | stuff of which legal victories are made."  <u>Id.</u>

21 |
22 |
23 |

24 |     [5]  The deposition of Von Colln's father, however, is one
25 | exception.  Plaintiff argues that the deposition of Von Colln's
    | father was related to the injunction.  (<u>See id.</u> at ¶ 5.)  Von
26 | Colln's father testified that the chair affected the plaintiff's
    | mental condition and was humiliating.  (<u>See id.</u>)  The Court
27 | considered these factors in granting the preliminary injunction
    | because the VCSD was using the chair as a "punishment" tool.
28 | (Order at 31-32.)  As such, compensation for the 2.5 hours spent on
    | the deposition is appropriate.

15

1    In Hervey, the Ninth Circuit, addressing motions for summary

2 judgment, held that prevailing in opposition to summary judgment

3 does not merit a fee award.  See Hervey, 65 F.3d at 792.  "Section

4 1988 does not provide for attorney fees when a party merely

5 establishes a right to trial."  Id.

6    In the present case, defendants have challenged plaintiffs'

7 request for compensation for matters related to plaintiffs'

8 successful opposition to defendants' motion to dismiss and motion

9 for summary judgment.  Defendants argue that under Hewitt and

10 Hervey plaintiffs may not be compensated for such services.

11 Defendants challenge 17 entries related to opposing defendants'

12 motion to dismiss and motion for summary judgment.  (Held Decl., ¶

13 6 (a)-(q).)

14    Defendants' reliance on Hewitt and Hervey is misplaced.  As

15 plaintiffs have accurately noted, neither case deals with a

16 plaintiff that has won a preliminary injunction on the merits.[6]

17 In Hewitt the plaintiffs had merely been successful in opposing a

18 motion to dismiss, the resolution of which was not on the merits.

19 In Hervey, the plaintiff simply succeeded in opposing defendant's

20 summary judgment motion.  In the present case, however, not only

21 did plaintiffs succeed in opposing defendants' motions, but they

22 also won a preliminary injunction.  They are prevailing parties

23 under Section 1988.

24    Cabrales v. County of Los Angeles, 935 F.2d 1050 (9th Cir.

25 1991), is more appropriately applied.  In Cabrales, the Ninth

26 _____

27    [6] Plaintiffs also argue that it was necessary to oppose each
of defendants' motions to preserve the possibility of obtaining a
28 preliminary injunction on the merits.

16

1  Circuit held that a plaintiff who was unsuccessful at one stage of

2  the litigation that was a necessary step toward victory was

3  entitled to attorney's fees even for the unsuccessful stage. See

4  id. at 1053. In doing so, the court acknowledged that "plaintiffs

5  are to be compensated for attorney's fees incurred for services

6  that contribute to the ultimate victory in the lawsuit." Id. at

7  1052. The reasoning advocated by the plaintiffs here is analogous

8  to the Ninth Circuit's reasoning in Cabrales.[7] Cabrales did not

9  prevail on a claim at one stage of the litigation. See id. She

10 did prevail on the claim at a later stage. See id. Even if a

11 plaintiff does not succeed on a specific claim, "the time spent on

12 that claim may be compensable, in full or in part, if it

13 contributes to the success of other claims."[8]  Id. (citing Hensley,

14 461 U.S. at 435).

15      Plaintiffs are prevailing parties by virtue of the Court's

16 order granting the preliminary injunction. They would not have

17 prevailed on the preliminary injunction had they not opposed

18 defendants' motions. Plaintiffs argue that defendants' summary

19 judgment motion sought Eleventh Amendment immunity against

20 plaintiffs' Section 1983 action. Plaintiffs argue that had they

21 not opposed that motion, they would not have been able to obtain

22 the preliminary injunction on the merits. (Plaintiffs' Reply at

23 8:21-9:7.) The motion to dismiss Chief Kipp, Sheriff Brooks and

24

25      [7]  Indeed, the present plaintiffs' argument is stronger than
26 Cabrales' because plaintiffs succeeded on their claims.

27      [8]  Judge Kozinski reached this conclusion by analogizing from
   the Supreme Court's decision in Hensley that a claim not prevailed
28 upon may nonetheless be compensable if it contributed to the
   overall success of the plaintiff as a "step toward victory." Id.

1  Ventura County was necessary to defend as they are the persons or
2  entities who control the use and misuse of the chair.  (Plaintiffs'
3  Reply, Mercado Decl., ¶ 6.)  Without Kipp, Brooks and Ventura
4  County, there would be no one to enjoin.

5      These circumstances are similar to those considered by the
6  Ninth Circuit in <u>Cabrales</u> in that the plaintiffs' opposition to
7  defendants' motions was an essential step toward victory on the
8  preliminary injunction.  It defies reason to award fees for
9  services rendered in achieving success on the preliminary
10 injunction without also awarding fees for the work that directly
11 contributed to that success.  Therefore, the Court awards
12 compensation to plaintiffs for their efforts in opposing
13 defendants' motion to dismiss and motion for summary judgment.

14

15            c.   **Miscellaneous services**

16     Defendants challenge several other entries as noncompensable.
17 First, defendants challenge the claim for compensation for the
18 deposition of Corcoran, the Pro-straint chair inventor.  (Held
19 Decl., ¶ 7.)  Defendants argue that information regarding the
20 chair's design and purpose was relevant only to the
21 constitutionality of the chair, an issue the Court has not yet
22 addressed.  The only issues addressed in the preliminary injunction
23 were the nature of use, duration, justification and toileting
24 access.  Therefore, the Court denies  compensation for the 19.5
25 hours entered for  the Corcoran deposition.

26     Second, defendants challenge the entries related to the
27 conventions against torture claim.  (<u>See</u> <u>id.</u> at ¶ 8.)  The Court
28 has ruled that plaintiffs have abandoned this claim as they cannot

1  recover for international treaty violations under Section 1983.
2  See Hawkins v. Comparet-Cassani, 33 F.Supp.2d 1244, 1255-57
3  (C.D.Cal. 1999).   Therefore, the Court denies the request for
4  compensation for the .6 hours spent on the treaty issue.

5      Third, defendants challenge certain "duplicative" entries
6  related to the Toney deposition and two settlement conferences.
7  (Held Decl., ¶ 9.)  Plaintiffs argue that two depositions of Toney
8  were required as defendants' counsel would not allow Toney to
9  answer questions related to the issue of nursing care at the
10 February 5, 1999, deposition.  (Plaintiffs' Reply, Mercado Decl., ¶
11 2.)  Once defendants' counsel named Toney as the person most
12 knowledgeable of nursing care issues as related to  the chair, the
13 second deposition on July 21, 1999, was required to address
14 plaintiffs' previously unanswered questions.  As to the settlement
15 conferences, plaintiffs argue that Paz and Mercado divided the
16 separate issues in the case in such a way that both attorneys
17 needed to attend the conferences.  (See id. at ¶ 3.)  Therefore,
18 the Court grants the request for compensation for both Toney
19 depositions and for each attorney's presence at the settlement
20 conferences.

21     Fourth, the defendants challenge the entry for plaintiffs'
22 counsel's review of the Court's order dismissing defendant Hartkop.
23 (Held Decl., ¶ 10.)  Plaintiffs argue, however, that apart from
24 defendant Hartkop, they  successfully opposed the dismissal of all
25 of the Doe defendants.  Defendants do not challenge the request for
26 fees related to all Doe defendants, merely Hartkop.  Therefore, the
27 Court denies the request for .9 hours for the review.

28

1  Fifth, defendants challenge entries for tasks performed after
2  the preliminary injunction was issued. (See id., ¶ 11.)
3  Plaintiffs have adjusted their total fee request accordingly from
4  $461,602.10, (Plaintiffs' Motion at 7) to $452,560.10.
5  (Plaintiffs' Reply, Mercado Decl., Ex. 2.)  As such, that challenge
6  is moot.
7  Sixth, defendants challenge the entries for the depositions of
8  the plaintiffs themselves.  Defendants, relying on Hanrahan,  argue
9  that the depositions were not relied upon in granting the
10  preliminary injunction.  (Held Decl., ¶ 12.)  Defendants, however,
11  misstate the law in Hanrahan.  The Supreme Court addressed the
12  issue of interlocutory dispositions, not depositions.  Plaintiffs'
13  counsel no doubt could assume that the nature of the chair's use
14  which was addressed by the injunction would arise at the
15  depositions.  Therefore, the Court grants the fee request for the
16  depositions of plaintiffs.
17  Finally, defendants challenge the entries for work on the
18  motions in limine.  (See id., ¶ 13.)  Defendants argue that the
19  motions in limine involve evidence to be excluded from a jury and
20  are not related to the equitable relief obtained by plaintiffs in
21  the form of a preliminary injunction.  As the motions in limine are
22  not germane to the injunction, the Court denies the one hour fee
23  request for reviewing the motions.
24
25  **1.   Reasonable rate**
26  "[R]easonable fees under § 1988 are to be calculated according
27  to the prevailing market rates in the relevant community." Blum v.
28  Stenson, 465 U.S. 886, 895 (1984).  The Ninth Circuit has

articulated a set of factors to be considered by a district court
in its determination of the reasonable rate component of the
lodestar.  See Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-
70 (9th Cir. 1975).  Once again the Ninth Circuit emphasized that
the determination of the amount of attorney fees to be awarded is
within the discretion of the district court and will not be
disturbed absent an abuse of discretion.  See id. at 69.  The Kerr
Court adopted the set of guidelines developed in Johnson v. Georgia
Hwy. Express, Inc., 488 F.2d 714 (5th Cir. 1974).  See Kerr, 526
F.2d at 70.  The following factors are to be considered:

> (1) the time and labor required, (2) the novelty and
> difficulty of the questions involved, (3) the skill requisite
> to perform the legal service properly, (4) the preclusion of
> other employment by the attorney due to acceptance of the
> case, (5) the customary fee, (6) whether the fee is fixed or
> contingent, (7) time limitations imposed by the client or the
> circumstances, (8) the amount involved and the results
> obtained, (9) the experience, reputation, and ability of the
> attorneys, (10) the "undesirability" of the case, (11) the
> nature and length of the professional relationship with the
> client, and (12) awards in similar cases.

Id.  Failure to consider such factors will be deemed an abuse of
discretion upon review.  See id.

In the present case plaintiffs' counsel claim hourly rates of
$395 for Paz, $300 for Mercado and $150 for Flores.  Defendants
argue that the appropriate hourly fees should be no greater than
$300.  Defendants cite Trevino v. Gates, 99 F.3d 911 (9th Cir.
1996), in support of the proposition that a fee request may be

21

1  lowered by the district court due to lack of complexity of the
2  issues.  See id. at 924-25.  Trevino is distinguishable, however,
3  because as the Ninth Circuit noted, the plaintiffs' attorneys in
4  Trevino "had already conducted a full trial on the same issue with
5  respect to other parties" in another case.  Id. at 925.  Unlike
6  Trevino, plaintiffs' counsel in the present case had not previously
7  litigated the issues that arose at the preliminary injunction.

8      Plaintiffs have provided a great deal of support for their
9  requested fee rates in the record.  Mr. Paz has noted that a rate
10  of $450/hour has been awarded recently in Los Angeles and as his
11  resume indicates, he has a great deal of experience in the field of
12  civil rights.  (Plaintiffs' Motion, Paz Decl., ¶¶ 4-11.)  Ms.
13  Mercado's resume indicates her own level of experience in the area.
14  (Plaintiffs' Motion, Mercado Decl., ¶¶ 4-10.)  In addition to their
15  experience, plaintiffs' counsel also assert that the
16  "undesirability" of their clients is a factor to be considered.
17  They contend that the unlikely prospect for a large damages award,
18  the negative effects of suing the Ventura County Sheriff and the
19  mental health of their clients taken together justify their fee
20  requests.

21      Therefore, the Court awards fees at the hourly rates requested
22  by plaintiffs' counsel.  Thus, the lodestar figure for fees to be
23  awarded to plaintiffs as a prevailing party is $424,692.60.

24

25      C.  Appropriateness of Multiplier

26      There is a strong presumption that the lodestar figure
27  represents a reasonable fee.  See City of Burlington v. Dague, 505
28  U.S. 557, 562 (1992).  A fee applicant who requests an adjustment

22

to the lodestar amount bears the burden of showing that "'such an adjustment is *necessary* to the determination of a reasonable fee.'" Id. (quoting Blum, 465 U.S. at 898) (emphasis in original). Plaintiffs request a multiplier of 2.0 be applied to the lodestar figure to arrive at a final compensation amount.   Plaintiffs cite Guam Soc. Of Obstetricians & Gynecologists v. Ada, 100 F.3d 691 (9th Cir. 1996), in support of the request.

In Guam, the Ninth Circuit approved of a district court award of a multiplier of 2.0 in a case challenging an antiabortion statute.  See id. at 699.  The district court in Guam determined that the case was extremely undesirable given the visibility and controversial nature of the abortion issue in a small, predominantly Roman Catholic community.  See id. at 697.  It reasoned that most experienced local counsel would not take the plaintiffs' case for fear of ostracization.  See id. at 697-98. The district court based its determination of the lack of available local counsel on an affidavit presented by plaintiffs.  See id. at 698.

Plaintiffs have submitted two declarations from Ventura County attorneys who claim that because plaintiffs are an unpopular group, no attorneys in the area would have taken the case.  (Heredia Decl., ¶ 5-6; Ramirez Decl., ¶ 4-5.)  Heredia and Ramirez both emphasize the "undesirability" of plaintiffs' cases.  The undesirability of a case, however, is a factor considered in establishing a reasonable rate, not a multiplier.  Furthermore, Mr. Heredia admits that he has a minor financial interest in this case as he has served as local counsel assisting Mr. Paz and Ms. Mercado in various capacities and his associate, Mr. Flores, has made a

23

1   request for compensation of fees for work related to the

2   injunction.   (Heredia Decl., ¶ 8.)

3        Plaintiffs' case is, however, distinguishable from Guam in a

4   broader sense.   The set of "rare and exceptional" circumstances

5   faced by the plaintiffs' attorneys in Guam, are not present here.

6   Guam, 100 F.3d at 697.   The Ninth Circuit's opinion addresses the

7   unique circumstances of the case against the backdrop of a heated

8   debate on the issue of abortion.   See id. at 698-99.   The district

9   court noted that the Roman Catholic Church threatened

10  excommunication of opponents of the law.   See id.   The attorneys

11  and plaintiffs challenging the law received death threats and

12  encountered "open hostility from members of the community."   Id.

13  Although certain attorneys may have rejected the present case,

14  there is no evidence in the record that no other local counsel

15  would have accepted representation.   Nor is there evidence in the

16  record to indicate that the present case involved a heated

17  controversy like the action in Guam.   Accepting this case may in

18  fact result in additional business for the civil rights attorneys

19  involved.

20       Fee awards are not intended to provide a "windfall" to

21  plaintiffs attorneys.   Riverside v. Rivera, 477 U.S. 561, 580

22  (1986).   The rare and exceptional circumstances found to

23  necessitate a multiplier in Guam are not supported by the record in

24  the present case.   Plaintiffs have failed to meet the burden

25  imposed upon them by Blum.   Therefore, the Court denies the

26  request for the application of a multiplier of 2.0 to the lodestar.

27

28

1      **D.   Existence of a "Live Appeal"**

2          Defendants argue that plaintiffs' request for fees should be

3    denied due to the existence of a "live appeal" in which defendants

4    contend that they will challenge the grant of preliminary

5    injunction.

6          Local Rule 16.10 provides that a motion for interim attorney's

7    fees may be brought after the entry of judgment or other final

8    order gives rise to the right.  The Supreme Court has stated that

9    an award of interim attorney's fees during pending litigation is

10   "especially appropriate" when a party has prevailed on an

11   "important matter."  Hanrahan, 446 U.S. at 757.  Furthermore,

12   delaying a fee award until the conclusion of litigation "would work

13   a substantial hardship on plaintiffs and their counsel" and act as

14   a disincentive to initiate the actions that Congress intended to

15   encourage by passage of the attorney fees legislation.  Bradley,

16   416 U.S. at 723.

17         Defendants cite to Webb v. Ada County, 195 F.3d 524 (9th Cir.

18   1999), and La Triste Restaurant v. Village of Port Chester, 188

19   F.3d 65 (2nd Cir. 1999), in support of their argument.  Defendants'

20   characterization of the Ninth Circuit's decision to deny an interim

21   fee award in Webb is not wholly accurate.  In Webb, the court

22   denied plaintiff's fee request for the "Doke motion," but granted

23   other fee requests.  See Webb, 195 F.3d at 527.  The Ninth Circuit

24   denied the interim fee request as to the "Doke motion" because the

25   plaintiff was not a prevailing party as to that particular motion.

26   See id.  The plaintiff was successful in striking Doke's

27   affidavit's, but did not succeed in his attempt to have Doke

28   declared not competent to provide psychological services.  See id.

25

1  The court's decision did not consider the existence of a live

2  appeal as grounds for a denial of the fee request.

3       La Triste Restaurant is equally inapplicable.  In La Triste

4  Restaurant, the Second Circuit denied prevailing party status to

5  the plaintiff because the defendant's agreement not to enforce the

6  challenged restriction was a "mere procedural maintenance[] of the

7  status quo."  La Triste Restaurant, 188 F.3d at 71   (citation

8  omitted).  Therefore, the fee request in La Triste Restaurant was

9  denied because the temporary injunction was not granted on the

10  merits, not because of the existence of a live appeal.[9]

11       Therefore, as the preliminary injunction gives rise to the

12  right, the Court grants the interim fee request regardless of the

13  existence of an appeal.

14

15  **IV.  Conclusion**

16       For the foregoing reasons, the Court grants plaintiffs' motion

17  for interim attorney's fees for 1,164.89 hours of the 1,246.29

18  hours requested.  Plaintiffs' are awarded $424,692.60 as calculated

19  in the lodestar.  The request for application of a multiplier of

20  2.0 is denied.

21  IT IS SO ORDERED.

22

23

24  Dated: *March 16, 2000*

                                    LOURDES G. BAIRD
25                                  United States District Judge

26

27  _____

         [9]  Furthermore, La Triste Restaurant is not on point because
28  in the present case plaintiffs won the preliminary injunction on
     the merits, not the acquiescence of defendants.

                                    26