

```
 1 ║ LAW OFFICES OF ALAN E. WISOTSKY
   ║ 300 Esplanade Drive, Suite 1500
 2 ║ Oxnard, California  93030
   ║ Tel:  (805) 278-0920
 3 ║ Fax:  (805) 278-0289
   ║
 4 ║ State Bar No. 68051
   ║
 5 ║ Attorneys for Defendants
   ║
 6 ║
 7 ║
 8 ║
 9 ║
10 ║
11 ║ KURT JOHN VON COLLN, KEITH     )   No. CV 97-3896 LGB (CWx)
   ║ GEORGE STRINGER, ERIC PRATT,   )
12 ║ and JEFFREY LLOYD,             )   consolidated w/
   ║                                )     No. CV 97-8352 LGB (CWx)
13 ║      Consolidated Plaintiffs,  )     No. CV 98-3051 LGB (CWx)
   ║                                )     No. CV 98-6092 LGB (CWx)
14 ║      v.                        )
   ║                                )
15 ║ COUNTY OF VENTURA; SHERIFF     )   STIPULATED DISMISSAL,
   ║ LARRY CARPENTER, in his        )   CONSENT DECREE, AND ORDER
16 ║ official and personal          )
   ║ capacity; SHERIFF BOB BROOKS,  )
17 ║ in his official and personal   )
   ║ capacity; CHIEF KEN KIPP, in   )
18 ║ his official and personal      )
   ║ capacity; DEPUTIES JOHN        )
19 ║ HAJDUCKO, JOHN HOELKER, BRIAN  )
   ║ RICHMOND, DENNIS SMITH,        )
20 ║ CLINTON JOHNSON, EDWIN ILANO,  )
   ║ and TODD WERRE; and DOES 1-10, )
21 ║                                )
   ║      Consolidated Defendants.  )
22 ║ _____ )
23 ║
24 ║      IT IS HEREBY STIPULATED by and between the consolidated
25 ║ parties to this litigation, as evidenced by the signatures of their
26 ║ attorneys below, as follows:
27 ║      1.   The district court has jurisdiction over this action
28 ║ pursuant to 28 U.S.C. §§1331 and 1343.   Venue over plaintiffs'
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

Docketed
Copies / NTC Sent
JS - 5 / JS - 6
JS - 2 / JS - 3
CLSD

1   claims is proper in the Central District of California under

2   28 U.S.C. §1391(b)(2).

3       2.   The parties enter into this Dismissal and Consent Decree

4   jointly and for the purpose of avoiding the risks and burdens of

5   litigation and to resolve all of plaintiffs' claims as set forth in

6   their first amended consolidated complaint and any other claims

7   they could have raised by virtue of the facts they allege.

8       3.   This Dismissal and Consent Decree, and the attached

9   restraint chair policy, will constitute the entire and final

10  agreement of the parties, and it is intended to incorporate the

11  negotiations of the parties.

12      4.   Each of the named plaintiffs, Kurt John Von Colln, Keith

13  George Stringer, Eric Ladon Pratt, and Jeffrey Lynn Lloyd, hereby

14  dismisses with prejudice each cause of action for damages and every

15  form of money damages relief (including the first, second, and

16  third claims for relief of the consolidated plaintiffs' first

17  amended complaint for damages and injunctive relief) in favor of

18  all named defendants (County of Ventura, Sheriff Larry Carpenter,

19  Sheriff Bob Brooks, Chief Ken Kipp, John Hajducko, John Hoelker,

20  Brian Richmond, Dennis Smith, Clinton Johnson, Edwin Ilano, and

21  Todd Werre) in all of their capacities and regardless of

22  misspellings of their names (e.g., Sheriff Bob Brooks is incor-

23  rectly denominated Sheriff Rob Brooks) and with prejudice in favor

24  of all fictitious defendants in all of their capacities.

25      5.   On March 16, 2000, the Court ordered interim attorneys'

26  fees incurred for success in obtaining a temporary injunction in

27  the amount of $424,692.60.   It is agreed that interest on this

28  order has been accruing at 10 percent.   Since the inception of the

1  case, plaintiffs' counsel have advanced $43,763.86 in costs. Since

2  the time the motion for interim attorneys' fees was filed in

3  December 1999, plaintiffs' counsel successfully defended the appeal

4  of the preliminary injunction and prepared for the pretrial

5  conferences, deposed defendants' expert witnesses and defended the

6  depositions of plaintiffs' expert witnesses, prepared opposition to

7  the interim fee appeal, prepared for trial, and incurred approxi-

8  mately 527 hours in additional attorney time. The parties agree

9  that plaintiffs' counsel are entitled under the law to apply for

10  further attorneys' fees; however, the parties have agreed to

11  resolve this fees issue by asking that the Court order that the

12  outstanding unpaid fees to the date of the signing of this Decree,

13  and costs advanced in litigating the case, may be satisfied by

14  payment to plaintiffs' counsel in the gross amount of $424,692.60

15  for the previous court-awarded fees, the outstanding costs of

16  $43,763.86, and an additional attorneys' fees award of $31,543.54

17  (for 527 hours), for a total payment of $500,000, by check made

18  payable to R. Samuel Paz only, the manner and distribution of which

19  will be directed by plaintiffs' counsel. Plaintiffs' counsel have

20  fully advised each plaintiff of the interim fees award and of the

21  outstanding fees and costs. The attorneys' fee award has been

22  assigned to plaintiffs' attorneys pursuant to the attorney-client

23  retainer agreement with each individual plaintiff. The agreement

24  for fees and costs is based on the Court's interim fee order of

25  March 16, 2000, and was arrived at during the mediation held before

26  the Honorable Enrique Romero on July 22, 2000.

27      6.  The parties and attorneys have further agreed to a

28  damages settlement for the individual plaintiffs in the additional

1  amount of $500,000 divided solely among the individual plaintiffs.

2  The damages settlement is payable as has already been agreed to by

3  the plaintiffs, in separate checks totaling the single sum of

4  $500,000, as will be directed by plaintiffs' counsel, provided that

5  plaintiffs' counsel supplies defendants' counsel with written

6  instructions specifying the amounts to each payee, addresses, and

7  taxpayer identification numbers.

8      7.   This total single-sum settlement of $1,000,000 represents

9  complete and permanent satisfaction of any and all causes of

10  action, claims, and demands, past, present, and future, arising

11  from this consolidated action and of all damages in any form,

12  including complete and permanent satisfaction of all compensatory

13  damages, whether general or special, and punitive damages (as to

14  which plaintiffs have given each and every defendant an inten-

15  tional, understanding, and unconditional waiver).

16      8.   The total single-sum settlement is also in complete and

17  permanent satisfaction of all past and present attorneys' fees,

18  costs, and interest thereon to the named and putative plaintiffs,

19  as well as their attorneys, in this consolidated action, so that

20  this order supersedes and subsumes the Court's fees award and the

21  wording of that award making the attorneys' fees payable to the

22  plaintiffs.

23      9.   The remaining cause of action, sounding in injunctive

24  relief, is also hereby dismissed with prejudice by all named

25  plaintiffs and by the certified class of injunctive, unnamed,

26  putative plaintiffs, against all named and fictitious defendants in

27  all of their capacities, with the following Consent Decree substi-

28  tuted for that cause of action.

4

10.   The only parties to the Consent Decree are the Ventura County Sheriff's Department and the certified class of unnamed plaintiffs.

11.   The subject matter of the Consent Decree is the Prostraint brand of violent-prisoner restraint chair and any similar restraint chair by any manufacturer used to restrain assertedly violent inmates in the Ventura County jail system.   The parties agree that the restraint chair will not be used in any manner until the monitor is selected and the policy attached and incorporated herein is implemented.

12.   The Court shall retain jurisdiction of this matter for all purposes during the term of this Decree.   At any time after thirty (30) months of continued substantial compliance, the defendants may move to terminate the Decree.   Any motion to terminate shall detail all aspects of the substantial compliance with the provisions of this Decree supported by admissible evidence.   The plaintiffs shall have 30 days from service of the motion to file any objection to the termination of the Decree.   The Decree shall remain in full effect until the Court rules on the motion to terminate.   If the plaintiffs object, the Court shall hold an evidentiary hearing, and each party may present evidence. The burden shall be on the moving party to demonstrate that it has fully implemented the Decree and maintained [plaintiffs seek three years; defendants believe two years is adequate] of substantial compliance.

13.   The parties shall select the monitor within sixty (60) days of entry of this Consent Decree.   If the parties are unable to agree upon the monitor's identity, then each side shall submit two

1  names and résumés of candidates in a joint format to the district
2  court, and the Court shall appoint the monitor from those persons
3  submitted.

4  14.  The monitor shall perform quarterly quality assurance
5  checks of any and all placements in the Prostraint-brand violent-
6  prisoner restraint chair or in any similar restraint chair in the
7  Ventura County jail system, evaluate the use of the restraint chair
8  and compliance with the Consent Decree policy, and issue a
9  quarterly report to the parties and the Court.  The Ventura County
10  Sheriff's Department shall allow the monitor full access to all
11  custody and medical/mental health staff, inmates placed in the
12  chair (if still in custody), inmate jail records, inmate
13  complaints, inmate medical records, restraint chair documentation,
14  videotapes, and all other relevant policies, manuals, and
15  procedures that the monitor deems necessary to fulfill his or her
16  duties.  The quarterly report shall be sent to the Court and the
17  attorneys for the parties and minimally set forth:

18  (a)  The frequency of the use of the chair;
19  (b)  The circumstances for the placement into the chair;
20  (c)  The time of release;
21  (d)  Justification for the time of restraint;
22  (e)  The timeliness of medical and mental health
23  intervention;
24  (f)  Any inmate complaints, claims, or lawsuits;
25  (g)  Any violations of the protocol, policies, and
26  procedures; and
27  (h)  Any discipline or measures taken for violations of
28  the protocol.

15. The monitor, as an agent of the Court, shall not release to the public the identities of any inmate or person placed in the restraint chair except to the Court or the parties' attorneys. The parties' attorneys shall not disclose the names of the persons without consent of the person or order of the Court. The monitor will treat as confidential all jail/medical records and shall use necessary procedures to identify incidents involving persons restrained in the chair without disclosing their identities in any quarterly report or testimony.

16. The monitor shall be compensated at a reasonable rate by the defendants but will be an agent of the court and shall not be retained by any current litigant or future litigant in any claim against the defendants. The monitor may testify in court regarding any matter relating to this Consent Decree.

17. In the event that the monitor reports substantial non-compliance with this Consent Decree, the Court, or upon application of any party, may issue an order to show cause why sanctions should not be imposed, and provide the Ventura County Sheriff's Department a reasonable opportunity to respond thereto in writing and conduct an abbreviated hearing to determine whether or not a violation has, in fact, occurred.

18. The settlement of the attorneys' fees in paragraph 5 shall constitute the full and complete compensation to plaintiffs' attorneys for fees and costs to the date of the signing of this Consent Decree. Any attorneys' fees or costs arising from the participation in any proceedings to enforce this Decree shall be in the discretion of the Court.

/ / /

19.   The parties have developed a written policy attached hereto and incorporated fully as though set forth in this Consent Decree.   The policy has been agreed to by the parties, as evidenced by the signatures of their legal representatives, R. Samuel Paz and Sonia Mercado on behalf of the named and putative plaintiffs, and Alan E. Wisotsky and Jeffrey Held on behalf of the defendants and the Ventura County Sheriff's Department.   The document is entitled "Ventura County Sheriff's Department Proposed Restraint Chair Policy," consisting of eleven typewritten pages.

20.   The parties agree that the Ventura County Sheriff's Department will implement this restraint chair policy and train any person who will have the authority to use the restraint chair to fully comply with the policy before the restraint chair is to be used by any person.

21.   The parties agree that the Ventura County Sheriff's Department will fund and have installed and operational, within 12 months of the entry of this Decree, video-recording cameras in the areas where restraint chairs are in use and will be subject to full compliance with its record-keeping obligations for retention of videotapes.   These videotapes will also be maintained according to law and be made available for the purpose of review by the monitor.

22.   Upon the Court's execution of this Stipulated Dismissal and Consent Decree, defendants shall forthwith dismiss defendants' Petition for Rehearing and Suggestion for Rehearing En Banc and defendants' fees appeal to the Ninth Circuit Court of Appeals.

23.   No changes, amendments, or modifications to this Decree may be made unless ordered by the Court.

/ / /

8

24. The parties agree to defend the terms of the Consent Decree, and each shall notify each other of any court challenge to this Decree. If the court challenge to this Decree is in any state court, the parties will agree to seek removal to federal court.

25. The parties agree that in the event any provision of this Decree is declared invalid by reason of a court of competent jurisdiction, then such a finding shall not affect the remaining provisions of this Decree.

**IT IS SO STIPULATED AND AGREED.**

Dated: August \\ , 2000

_____
R. SAMUEL PAZ

*Attorney for Consolidated Plaintiffs*

Dated: August // , 2000

_____
ALAN E. WISOTSKY

*Attorney for Consolidated Defendants*

**IT IS SO ORDERED.**

Dated: Aug. 11, 2000

_____
LOURDES G. BAIRD
United States District Judge

RESTRAINT
  CHAIR
  POLICY

**Ventura County Sheriff's Department**
**Proposed Restraint Chair Policy**
August 6, 2000      **Draft 7B**
Pages: 11

## PURPOSE

To establish policy and procedure for the use and operation of the Division's restraint chair. This policy is designed to provide a temporary, safe and humane method of securing an inmate who has displayed behavior that is hazardous to self or others until qualified medical personnel and the watch commander can properly evaluate, treat, and/or identify other less restrictive means in which to control the inmate's violent behavior.

## DEFINITIONS

I.      Watch Commander

      A.      The on-duty Facility Sergeant.

II.     Restraint Chair

      A.      Pro Straint Chair or similar design or functioning chair.

III.    Hazardous Behavior

      A.      Inmate behavior which physically demonstrates a present intent to cause harm to self or others. This may include immediate verbal threats to cause such harm, accompanied by articulable information which would support the inmate's stated intentions. A bad attitude, foul or angry language, will not in and of itself constitute justification for placement into the restraint chair.

IV.    Mental Health Provider

      A.      A psychiatric nurse, psychiatric technician, psychiatric social worker, physician or psychiatrist.

## V.   Medical Personnel

    A.    Registered nurse, family nurse practioner, physicians assistant, physician, or psychiatrist.

## VI.   On-Call Medical Provider

    A.    Physician or psychiatrist or psychiatric registered nurse.

## POLICY

## I.   Usage

The restraint chair shall only be used after all other alternatives have been considered and deemed inappropriate.  Those other alternatives may include single person cells, single person detoxification cells, safety cells, handcuffs, leg shackles, or waist chains and cuffs. (Under no circumstances will an inmate be "hog-tied" with their feet and hands cuffed together.)

Custody staff shall be guided by the philosophy that the restraint chair is to be used as a last resort and temporary restraint device.

The restraint chair shall only be used under the following circumstances with the approval and under the direction of the Watch Commander:

    A.    To temporarily restrain a violent inmate for a minimum amount of time who has physically demonstrated a present intent to cause physical harm to self or others.

    B.    When the Emergency Response Team has been used to restrain an inmate, the restraint chair may be used during movement or transportation of the inmate out of the area to another location within the facility.

    C.    The restraint chair may be used during movement in and out of the custody facilities as a security or protective manner to restrain an inmate who has a high violence potential or who is a high security risk.

**Use of the restraint chair as punishment, discipline, playfulness, or carelessness is strictly forbidden. No inmate in the restraint chair shall be subjected to ridicule, embarrassment or inhumane treatment.**

II.   Acceptance of Violent Inmates

Whenever an arrestee who displays behavior as outlined in Policy, Section I, A, is delivered to the Ventura County Sheriff's Department for booking, the arresting agency will be required to obtain a medical clearance prior to acceptance. If the inmate would be immediately placed into the restraint chair upon acceptance, that criteria alone is sufficient to require a medical clearance from the Ventura County Medical Center. In all cases, both medical personnel and the watch commander must agree that an inmate is acceptable to book.

## PROCEDURE

I.   Approval and Use of the Restraint Chair

The Watch Commander shall be present whenever an inmate is placed in the restraint chair for the reasons referred to in this chapter under Policy, Section 1, Subsections A, B, or C.

The Watch Commander shall ensure that medical personnel is immediately summoned to conduct a medical and mental health screening as defined by Title 15 and the Institution for Medical Quality (IMQ)/California Medical Association (CMA) standards to the best of their ability, taking into consideration the level of cooperation of the inmate. The restrained inmate shall be assessed for signs of medical distress, mental illness, proper circulation, and breathing restrictions and vital signs. Following the medical screening, medical staff will immediately notify the on-call medical provider to apprise him/her of the circumstances and the condition of the inmate. The watch commander shall be guided by any recommendations made by the on-call medical provider and current suicide policy if applicable.

If medical personnel, the mental health provider or the watch commander believe the inmate's physical or mental health is compromised or deteriorates because of the restraint chair, the watch commander will immediately facilitate the inmate's transfer to a medical or mental health facility.

**The watch commander and medical personnel shall review the need for continued retention at least once every hour and document that review on the monitoring log. Included in the assessment will be the inmate's medical and mental health condition as determined by medical or mental health staff.**

**All information used in determining continued retention shall be documented by the Watch Commander and medical personnel on the monitoring log.**

II.   Prior to Placement into Restraints

Secure the inmate being placed into the restraints in one of two ways:

A.   Handcuffed behind the back and shackled

1.   Ensure that the inmate's palms are facing together and the handcuffs are double-locked.

2.   Ensure that the shackles are double-locked.

B.   Belly or waist chains and shackled

1.   Ensure that the padlock for the chain is in the front.

2.   Ensure that the shackles are double-locked.
   a.   After securing the inmate with handcuffs and shackles, move the inmate from a prone position to either a seated or standing position as soon as practical to prevent the possibility of positional asphyxia.

III.   <u>Placement of an Inmate into the Restraint Chair</u>

A.   Use only the force that is reasonable to place the inmate into the restraint chair. The circumstances of each incident will dictate how much force will be used.

B.   Officer safety shall be maintained. It is imperative that the supervisors continually evaluate the method of restraint used during each incident.

   1.   A minimum of three deputies shall be present and assisting when placing an inmate into the restraint chair. They shall be under the direction of a senior deputy or sergeant.

   2.   The inmate shall be backed up to the chair with one deputy on either side. One deputy shall be in front of the inmate and will maintain control of the shackle chain by holding it to the floor plate with his/her foot. The supervisor should be behind the chair, giving direction. The restraint chair was designed with a cant to facilitate initial placement and make it difficult for the inmate to escape while being restrained. However, the cant allows a greater degree of leg mobility and increases the ability of the inmate to kick prior to being secured.

   3.   The two deputies at the inmate's sides shall assist the inmate into the restraint chair by helping the inmate as he/she sits.

   4.   Secure the two cross chest straps first. Hand the straps across the inmates body rather than a staff member leaning over the inmate, thus preventing any exposure to a potential "head butt" or bite from the inmate. The waist strap should be applied next in the same fashion.

   5.   Secure the leg restraint straps to the inmate's legs and then remove the leg shackles.

6. Move the inmate's hands from behind his/her back and secured them to the side of the chair as soon as the inmate is secure in the chair. When leaning the inmate forward to remove the cuffs, observe the inmate's breathing and sit him/her upright as soon as possible.

7. While securing the inmate's hands with appropriate holds, remove one wrist from the handcuffs. Secure the inmate's wrists into the cuff of the padded nylon restraining straps. The inmate's hands may be handcuffed to the chair until the padded nylon straps are applied. Remove all metal handcuffs once the inmate is secured.

If an inmate is so violent that they escape from the nylon straps, the inmate's hands may be cuffed to the chair. This decision must be weighed with the possibility that the inmate may injure himself/herself with the handcuffs.

**At no time will an inmate be stripped of his/her clothing to be placed in the restraint chair. If an inmate has removed his/her own clothing, every effort will be made to provide them with a paper gown, suicide smock or other appropriate attire while he/she is restrained to ensure personal digity is respected to the extent possible.**

IV.   Placement of a Spit Mask

If an inmate is spitting while being placed in the restraint chair, the Watch Commander may authorize the use of a spit mask. Place the "spit sock hood" or other similar see through design mesh netting, over the inmate's head to prevent the inmate from spitting on staff. This can be done after the initial restraining of the inmate, or once the inmate has been seated in the restraint chair. The spit mask will be removed as soon as practical.

V.   Hydration and Sanitation Issues

A.   A restrained inmate will be offered water at least once every hour by medical personnel during their assessments or as often

as recommended by the medical staff. Unbreakable or plastic cups will be used to give the inmate water.

B.   If the restrained inmate expresses a need to use the toilet, the Watch Commander will be notified and will respond and supervise the removal of the inmate. The inmate will be removed from the wrist restraints and handcuffed with his hands to the front. The inmate's ankles will be removed from the straps and leg shackles will be placed on his/her ankles. The chest straps will then be removed and the inmate will be escorted to a cell with a toilet. A deputy of the same gender will maintain visual observation of the inmate while they are out of the restraint chair.

If at any time during this process, the inmate attempts to injure self, staff or others, he/she will be immediately restrained until such time as the Watch Commander determines the inmate will cooperate with the toilet procedure.

The Watch Commander will re-assess the inmate's behavior at this time and if appropriate (e.g., where the inmate is cooperative) transfer the inmate to a safety cell, removing him/her from the restraint chair. If the inmate is returned to the restraint chair, the Watch Commander must document the continued violent behavior justifying continued retention.

Anytime hydration or sanitation needs are addressed by staff, those issues will be noted on the monitoring logs.

VI.   Exercising Extremities

The use of any device to restrain an extremity carries with it a danger of restricting or cutting off circulation and compromising the health of the inmate.

A.   To ensure that circulatory problems (e.g. blood clots) do not develop in the extremities (arms and legs) of any inmate placed in a restraint chair, staff will provide the restrained inmate an opportunity to exercise his/her extremities within the first two

hours and at all other times as recommended by medical personnel.

    1.    Each time a range of motion procedure is conducted, medical personnel shall monitor and note such activity on the monitoring log and medical record.

B.    Staff shall release one limb at a time allowing the inmate to extend the limb as fully straight as possible, ten times per limb or three minutes per limb, which ever comes first.

C.    If at any time an inmate attempts to injure staff during this range of motion exercise, he/she will be immediately restrained. Additional attempts to permit range of motion exercises will occur at the next one (1) hour period.

D.    During the range of motion exercise, there shall be an assessment as to whether the restraining should continue and whether the inmate can be safely removed to a safety cell or other less restrictive location.

VII.   <u>Monitoring of an Inmates Held in Restraints</u>

A.    An inmate held in the restraint chair must be directly observed by staff at least every 15 minutes to ensure the safety and well being of the inmate.

    1.    Each deputy who monitors an inmate in restraints shall ensure that the restraints are properly employed, ensure the safety and well being of the inmate and ensure release when the violent behavior stops. Each time a deputy checks on an inmate, the deputy will document if the inmate's behavior is such that they could be removed from the restraints. If a deputy believes an inmate is capable of being released from restraints, they will contact the Watch Commander who will evaluate releasing the inmate from restraints. These observations and issues will be noted on the monitoring log and medical records.

B.   An inmate must be examined by medical personnel,
     immediately upon placement into the restraint chair.

     1.   If, at any time, medical personnel articulates a medical
          necessity to remove an inmate from the restraint chair,
          the Watch Commander will immediately facilitate the
          inmate's transfer to a medical or mental health facility.

          In determining whether to release an inmate who is in
          need of medical or mental health attention, the Watch
          Commander must consider the need to maintain facility
          security and staff safety in relation to the inmates medical
          risks, keeping in mind that the restraint chair is a mobile
          instrument and transportation elsewhere in or outside the
          facility can safely occur while the inmate remains in the
          restraint chair.

     2.   If medical or mental health staff recommend that a
          restrained inmate be transported to a Mental Health
          Facility as provided in 5150 of the Welfare and
          Institutions Code, the Watch Commander will facilitate
          the immediate transportation of the inmate.

C.   An inmate must be reviewed for continued restraint chair
     retention a minimum of every hour by the Watch Commander.
     During every review, the watch commander will consult with
     medical and/or mental health staff to ensure the inmate's
     physical or mental health is not being compromised pursuant to
     B,1 above.

D.   All of this monitoring must be documented on the inmate
     monitoring logs.

VIII.   Removal From the Restraint Chair

The Watch Commander shall release an inmate from the restraint
chair as soon as possible unless the inmate's behavior continues to
threaten the safety of others, staff or self.  The Watch Commander
must specifically describe the continued violent behavior to self or
others justifying continued restraint in writing on the inmate-

monitoring log. If continued restraint is justified, the Watch Commander will review the justification again within one hour.

**If after a four (4) hour period an inmate displays behavior, which necessitates the continued restraint in the restraint chair, the watch commander will immediately facilitate the inmate's transfer to a medical or mental health facility.**

**In no case will an inmate be restrained in a restraint chair longer than four (4) hours, exclusive of the time necessary to transport them to a mental health or medical facility.**

IX.   Restraint Notification and Documentation Requirements

The Watch Commander shall ensure a Jail Incident Report (JIR) is submitted stating the reason for placing the inmate in the restraint chair. The Watch Commander shall inspect each report and once approved, they will be forwarded, to the Facility Manager for review. This does not preclude the necessity of submitting a Crime/Incident Report if the circumstances warrant it, (i.e. ERT, cell extraction). In all cases a fifteen (15) minute monitoring log shall be initiated and maintained until the inmate is removed from the restraint chair.

In accordance with IMQ guidelines, the nurse shall examine all inmates placed in restraints for the reasons referred to in this chapter under Policy, Section 1, Subsections A, B, or C. This information shall be documented on the inmate's medical chart and on the inmate's monitoring log.

1.   If the placement into restraints is accomplished during an ERT cell extraction, the reasons for such placement shall be incorporated into the ERT report.

2.   If the placement into the mechanical restraints is accomplished in conjunction with housing into a safety or detox cell, one JIR stating the reasons for both shall suffice.

3.   If the restraint chair is being used as a security measure as defined in Policy, I, C, a JIR shall be written on each use and routed through normal channels.

Use of Restraint Chair Policy
Page 11 of 11

4.    If force is required to place an inmate into the restraints, the JIR shall include the action of the deputies involved.

After an inmate has been removed from the restraint chair, copies of all reports and monitoring logs shall be forwarded to the Facility Manager for review. Completed logs shall be forwarded to Central Inmate Records for filing.

STATE OF CALIFORNIA, COUNTY OF VENTURA:

I am employed in the County of Ventura, State of California. I am over the age of 18 and not a party to the within action; my business address is 300 Esplanade Drive, Suite 1500, Oxnard, California 93030.

On August 11, 2000, I served the foregoing document described as **STIPULATED DISMISSAL, CONSENT DECREE, AND ORDER** on all interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

R. Samuel Paz                              *Conformed courtesy copy*:
LAW OFFICES OF R. SAMUEL PAZ
520 South Grand Avenue, 7th Floor          Hon. Lourdes G. Baird
Los Angeles, CA  90071-2645                Suite 770
                                           Roybal Federal Building
Sonia M. Mercado                           255 East Temple Street
SONIA MERCADO & ASSOCIATES                 Los Angeles, CA 90012
520 South Grand Avenue, 7th Floor
Los Angeles, CA  90071-2645

F. Samuel Heredia
HEREDIA & ASSOCIATES
300 Esplanade Drive, Suite 1170
Oxnard, CA  93030

I delivered such envelope by hand to the offices of the addressee.

Executed on August 11, 2000, at Oxnard, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

ALAN E. WISOTSKY